# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| DALE JESSE HUNTER, | : | |
| Plaintiff, | : | |
| vs. | : | CA 18-0072-MU |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 18 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the January 10, 2019 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment
(Continued)

## I. Procedural Background

Plaintiff, through his mother, filed an application for supplemental security income benefits on April 28, 2015, alleging disability beginning on June 1, 2013. (*See* Tr. 152-55.) His claim was initially denied on August 26, 2015 (*see* Tr. 94-100) and, following Plaintiff's written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 103-04), a hearing was conducted before an ALJ on November 28, 2016 (Tr. 35-82). On March 20, 2017, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to supplemental security income benefits. (Tr. 10-24.) More specifically, the ALJ went to the fifth step of the five-step sequential evaluation process and determined that Hunter has the residual functional capacity to perform those unskilled jobs identified by the vocational expert ("VE") during the administrative hearing (*compare* Tr. 22-23 *with* Tr. 78-79). On April 24, 2017, the Plaintiff filed a written request for review of the ALJ's unfavorable decision (Tr. 151) and, on December 20, 2017, the Appeals Council denied Hunter's request for review (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to Asperger's Syndrome. The ALJ made the following relevant findings:

> **2. The claimant has the following severe impairment: Autism Spectrum Disorder (20 CFR 416.920(c)).**
>
> . . .
>
> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

---

entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**4.** **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to simple, routine, and repetitive tasks and limited to low stress jobs, defined as only simple decision making required with no interaction with the public and only occasional interaction with co-workers.**

. . .

**5.** **The claimant has no past relevant work (20 CFR 416.965).**

**6.** **The claimant was born on June 20, 1994, and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.** **The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8.** **Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9.** **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

. . .

**10.** **The claimant has not been under a disability, as defined in the Social Security Act, since March 16, 2015, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 12, 15, 22 & 23).

## II. Standard of Review and Claim on Appeal

A claimant is entitled to an award of supplemental security income benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a)

(2016). In determining whether a claimant has met his burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities (that is, a severe impairment), he is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that his impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, he must prove that his physical and/or mental impairments prevent him from performing any past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

(11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

On appeal to this Court, Hunter asserts but one reason why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to comply with 20 C.F.R. § 416.927(c)(1)-(5) in that he erred by finding that the opinion of an examining neuropsychologist, Dr. Melissa Ogden, was overstated. And while Plaintiff's brief considers the medical opinions of record through the prism of factors listed in § 416.927(c), it is clear that what Plaintiff is arguing is that the ALJ did not properly consider/weigh the medical opinions of record, as noted by the Commissioner in her brief (*see* Doc. 14, at 6), and that the ALJ's two proffered reasons for rejecting a portion of Dr. Ogden's limitation findings (Doc. 14, at 8 (Commissioner notes in her brief that the ALJ gave little weight to Dr. Ogden's marked limitations on the basis that they were not supported by the objective record, including the consultative evaluations of Drs. Robert A. DeFrancisco and Pamela Starkey, and that these limitations were inconsistent with Dr. Ogden's diagnosis that Plaintiff has the least severe form of autism); *compare id. with* Tr. 20)) are not supported by substantial evidence (*see generally* Doc. 11). The undersigned agrees with Plaintiff in this unusual case that the ALJ's evaluation of the opinion evidence in this case, particularly the two reasons offered for giving little weight to Dr. Ogden's marked limitations, is not supported by substantial evidence.

There can be little question but that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are

given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 686 Fed.Appx. 731, 732 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'").

"When weighing each medical opinion,[5] the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Commissioner of Social Security,* 716 Fed.Appx. 917, 919 (11th Cir. Nov. 27, 2017), citing 20 C.F.R. § 416.927(c) (footnote added); *see also Jacks v. Commissioner, Social Security Administration,* 688

---

[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

7

Fed.Appx. 814, 819 (11th Cir. May 23, 2017) ("The ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including whether the doctor has examined the claimant, the medical evidence and explanation supporting the doctor's opinion, and how consistent the doctor's 'opinion is with the record as a whole.'" (citations omitted)). "These factors apply to both examining and non-examining physicians." *Huntley v. Social Security Administration, Commissioner,* 683 Fed.Appx. 830, 832 (11th Cir. Mar. 29, 2017) (citations omitted).

> When considering an examining, non-treating medical opinion,[6] "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." Moreover, "because nonexamining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion."

*Id.* at 832-33 (internal citations omitted; footnote added). A panel of the Eleventh Circuit has determined that an "ALJ is not required to explicitly address each" of the factors set forth in § 416.927(c), *see Lawton v. Commissioner of Social Security,* 431 Fed.Appx. 830, 833 (11th Cir. June 22, 2011), and that the core inquiry is whether "good cause" exists for rejecting particular medical opinions, *see id.*

---

[6] Here, there can be no argument by Plaintiff that Dr. Ogden is anything other than an examining, non-treating physician. As established in this Circuit, "[t]o qualify as a treating source, the physician must have an ongoing treatment relationship with the claimant." *Reynolds-Buckley v. Commissioner of Social Security,* 457 Fed.Appx. 862, 864 (11th Cir. Feb. 9, 2012). In this case, Dr. Ogden, like Drs. Starkey and DeFrancisco, only saw and examined Plaintiff on one occasion; therefore, Dr. Ogden cannot be regarded as a treating physician. *See Eyre v. Commissioner, Social Security Administration,* 586 Fed.Appx. 521, 523 (11th Cir. Sept. 30, 2014) (recognizing that a physician who conducts a single examination is not a treating physician).

With these principles in mind, the undersigned considers whether the ALJ in this case improperly considered the opinion evidence in this case. To the extent Plaintiff requests that this Court consider his assignment of error by specifically evaluating the evidence in the context of each of the specific factors set forth in § 416.927(c), the Court declines to do so because, as set forth in *Lawton, supra,* an ALJ is not required to explicitly address each of those factors, 431 Fed.Appx. at 833. And since an ALJ is not required to explicitly address each of those factors, it would turn *Lawton* on its head if this Court was to find that it could independently assess each of those factors. And, indeed, to the extent Hunter is asking this Court to reweigh those factors, this Court does not have the authority to do so. *See Winschel, supra,* 631 F.3d at 1178 ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'").

While this Court cannot reweigh the evidence in this case within the context of the foregoing relevant factors, as *Lawton* and other relevant caselaw establishes, it is the Court's responsibility to determine whether the ALJ properly weighed the medical opinions in this case and, specifically, whether the ALJ properly rejected (or gave little weight) to Dr. Melissa Ogden's opinions that Plaintiff has "marked" limitations/restrictions in interacting appropriately with the public, supervisors, and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting (*compare* Tr. 233 (Dr. Ogden's specific findings) *with* Tr. 20 (ALJ's summary of Dr. Ogden's findings: "a marked level of severity in social interaction and adjustment to changes[.]").[7] The ALJ offered but two reasons for rejecting Dr. Ogden's "marked" limitations: (1) such limitations are not "supported by the objective ***treatment*** record, including the consultative

---

[7] And in performing this analysis, this Court can certainly reference some of those factors, where appropriate and relevant.

evaluations of Dr. DeFrancisco and Dr. Starkey[;]" and (2) these "marked limitations were intrinsically inconsistent with a finding of the least severe form of autism spectrum disorder, as Dr. Ogden assessed." (Tr. 20 (some emphasis supplied)). Based upon the analysis/discussion that follows, the undersigned concludes that neither of the ALJ's reasons for rejecting the entire spectrum of Dr. Ogden's "marked" limitations/restrictions is supported by substantial evidence in the record.

With respect to the first reason, while the ALJ specifically states that the evidence in the ***treatment*** record supplied by Drs. DeFrancisco and Starkey is inconsistent with Dr. Ogden's opinions about Hunter's limitations/restrictions vis-à-vis interacting appropriately with the public, supervisors, and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting (*see* Tr. 20), a review of those treatment records does not fully support the ALJ's decision. Of particular note, neither Dr. DeFrancisco[8] or Dr. Starkey offered any opinion regarding Plaintiff's ability to interact appropriately with the public or to respond appropriately to changes in a routine work setting (*compare* Tr. 210-12 *with* Tr. 220),[9] which are certainly

---

[8]    Dr. DeFrancisco's evaluation offers little of value beyond his diagnosis of Asperger's Syndrome. (*See* Tr. 210-12.) He certainly offers no relevant evidence impacting basic work activities. (*See id.*) And to the extent the ALJ wants to make "hay" with Dr. DeFrancisco's "thought" that Hunter would qualify for "Vocational Rehab" (Tr. 211), he cannot because, in the very next breath, Dr. DeFrancisco offers the opinion that Hunter "will probably qualify for SSI[.]" (*Id.*) In other words, these two back-to-back musings/thoughts by Dr. DeFrancisco are mutually exclusive, such that they offer no support for the ALJ's rejection of Dr. Ogden's "marked" limitations/restrictions.

[9]    It need be parenthetically noted that Dr. Starkey stated only that Hunter's ability to manage "common work pressures appears moderately impaired." (Tr. 220.) This finding by Dr. Starkey, in the undersigned's opinion, has nothing to do with "changes" in a routine work setting; instead, it is clearly "equivalent" to a finding that Plaintiff would be moderately impaired in responding appropriately to usual work situations.

relevant considerations (*see* Tr. 233), *see, e.g.,* 20 C.F.R. § 416.922(b) (examples of basic work activities include, responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting); *compare Miguel v. Astrue,* 2012 WL 1080581, *2 (M.D. Ala. Mar. 30, 2012) (noting that the ALJ posed a hypothetical to the VE in which he found that the Plaintiff had "moderate restrictions on interacting appropriately with the public; interacting appropriately with supervisors; interacting appropriately with co-workers; and responding appropriately to usual work situations; and [to] changes in routine work settings[.]") *with Sarria v. Commissioner of Social Security,* 579 Fed.Appx. 722, 725 (11th Cir. Aug. 28, 2014) (finding hypothetical posed to VE by the ALJ complete where the hypothetical including a finding that the individual could interact appropriately with the public and coworkers, respond appropriately to supervision, and deal with changes in a routine work setting); therefore, the treatment record from these two examining physicians obviously cannot be found to be inconsistent with Dr. Ogden's opinion about the level of severity of Hunter's ability to interact appropriately with the public and to respond appropriately to changes in a routine work setting. Accordingly, the first reason offered by the ALJ for rejecting Dr. Ogden's opinions on these two particular points is not supported by substantial evidence.

As to the ALJ's second reason, he simply states it in a conclusory and bare manner without any explanation for why Dr. Ogden's diagnosis of the least severe form of autism spectrum disorder (level 1) would be "intrinsically inconsistent" with the marked limitations found by the examining neuropsychologist. (*See* Tr. 20.) In other words, this "reason" is asserted in a vacuum without any citation to record evidence that directly supports it. Certainly, the ALJ points to nothing in Dr. Ogden's comprehensive evaluation which

11

supports a finding of "intrinsic inconsistency" and, importantly, the ALJ does not address Dr. Ogden's explanation (and opinions) for why Autism Spectrum Disorder level 1 would significantly hamper Hunter's ability to perform numerous work activities (*compare id. with* Tr. 230-31). Dr. Ogden, a clinical neuropsychologist[10] who administered in excess of ten (10) neuropsychological measures on November 17, 2016 (*see* Tr. 224), gave some insight and opinions regarding Hunter's "meeting" of the "criteria for the least severe for (level 1)[]" of Autism Spectrum Disorder:

> This level is assigned to individuals who need support and whose behavioral difficulties cause ***significant interference in daily functioning***. Having this condition in the least severe form ***should not be mistaken to indicate the condition does not significantly hamper his ability to function productively in a variety of contexts, including occupational settings. It is my opinion*** that Mr. Hunter is not capable of meeting the requirements of an unskilled job on a sustained basis (i.e., over the course of a 40-hour work week). ***His thinking is concrete and his understanding of social mores is limited. As such, he is naïve and vulnerable to undue influence. His behavior is often inflexible, causing significant interference in his functioning. Mr. Hunter also has difficulties with organization, planning, and initiative which hamper his independence.*** He would be expected to have marked difficulty interacting appropriately with supervisors, [the] public, and coworkers. Responding to changes in a routine work setting would also be significantly challenging for him and ***his inattention would make it difficult for him to focus for extended periods of time and follow tasks through to completion.***

(Tr. 230-31 (emphasis supplied)). Instead of addressing Dr. Ogden's explanation and opinions "head on," the ALJ in this case did exactly what Dr. Ogden warned against and

---

[10] "Clinical Neuropsychology is a specialty in professional psychology that applies principles of assessment and intervention based upon the scientific study of human behavior as it relates to normal and abnormal functioning of the central nervous system. The specialty is dedicated to enhancing the understanding of brain-behavior relationships and the application of such knowledge to human problems." https://www.apa.org/ed/graduate/specialize/neuro.aspx (last visited, January 11, 2019, at 10:51 a.m.); *see* https://neurotreatment.com.au/clinical-neuropsychologist-or-psych . . . (last visited, January 11, 2019, at 0:49 a.m.) ("Clinical Neuropsychologists are experts at understanding the cognitive, emotional and behavioral effects of brain-based conditions, including, but not limited to[,] . . . Autism-Spectrum Conditions[.]").

this was to mistake the diagnosis of the least form of Autism Spectrum Disorder with a finding that this impairment would not significantly impact Plaintiff's ability to perform numerous work activities. As alluded to earlier, this was error, in the Court's opinion, because this "reason" is wholly conclusory and not directly tied to any evidence of record. In other words, the ALJ's second reason is not supported by substantial evidence of record. Moreover, the ALJ's wholesale failure to directly address Dr. Ogden's explanation and opinions regarding the impact of Autism Spectrum Disorder (level 1) on Hunter's ability to perform work activities accounts not only for the lack of substantial evidence to support the ALJ's second reason but, as well, is error on its own accord, *see Baez v. Commissioner of Social Security,* 657 Fed.Appx. 864, 870 (11th Cir. July 27, 2016) (finding reversible error where the ALJ's decision suggested "that the ALJ failed to consider **pertinent elements** of an examining physician's medical opinion[.]" (emphasis supplied)).

In light of the foregoing, this Court concludes that a remand is necessary so that the ALJ can reconsider his assessment of Hunter's RFC in light of Dr. Ogden's opinions on the above-identified (and other related[11]) matters and then re-examine, at step five, whether there is work Hunter is capable of performing. Additionally, given that Dr. Starkey, who touched upon Hunter's mental RFC (*see* Tr. 220), did not have the benefit of Dr. Ogden's additional comprehensive testing and report,[12] the ALJ should obtain a new mental RFC assessment that considers all of the medical evidence in the record.

---

[11] This is meant to reference the contents of Dr. Ogden's explanation/opinions found at Transcript pages 230-31.

[12] Non-examining, reviewing, clinical psychologist, Dr. Joanna Koulianos, also did not have the benefit of Dr. Ogden's comprehensive evaluation. (*See, e.g.,* Tr. 87.)

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[13] see *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 22nd day of January, 2019.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is appropriate under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."